GARY RESTAINO
United States Attorney
District of Arizona
BENJAMIN GOLDBERG
New York State Bar No. 5346838
MARIA R. GUTIERREZ
Arizona State Bar No. 026659
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: ben.goldberg@usdoj.gov
Email: maria.gutierrez@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-23-00467-PHX-DLR |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT** |
| Alayjon Dewayne Tamplin aka Alayjon Tamplin, | |
| Defendant. | |

The United States hereby responds to Defendant Alayjon Dewayne Tamplin's objections to the Presentence Report (PSR). For the reasons below, the United States requests that the Court overrule the Defendant's objections.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     FACTS

On November 9, 2022, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) reviewed the contents of a telephone that belonged to an individual for whom the Defendant was purchasing firearms ("Individual 1"). (PSR ¶ 8.)

Communications on April 19, 2022, showed that the Defendant and Individual 1 were discussing the purchase of two firearms by the Defendant for Individual 1. The conversation starts with the Defendant asking if Individual 1 needs "any store runs". (Exh.

A at Bates 000017.) After some conversation, the Defendant asks, "how many guns" to which Individual 1 responds, "2". (Exh. A at Bates 000019.) Individual 1 and the Defendant then discuss the types of firearms the Defendant is going to purchase, where to purchase the firearms, and the Defendant's fees for purchasing the firearms. (Exh. A at Bates 000020-23.) As they are discussing the Defendant's fees, Individual 1 tells the Defendant that "we still got the gunshow mf" to which the Defendant responds, "so 100 for each gun n sum tree"[1]. (Exh. A at Bates 000023.) Subsequent texts show that the Defendant also negotiates gas money as part of his fees. (Exh. A at Bates 000024.) Then, the Defendant asks "So what happens if they ask for my weapons vault n ion got the weapons" and adds "What charge is that". (Exh. A at Bates 000025.) Individual 1 responds, "Wym"[2]. (Exh. A at Bates 000026.) The Defendant asks, "N how many guns from the gun show?" *Id*. Individual 1 responds, "A couple ima ne taking my cousin too". (Exh. A at Bates 000027.) The Defendant says, "Bet"[3] and "Idc"[4]. *Id*. The Defendant then adds, "I'm in it for the money" and "just don't kill the president wit the mfs". (Exh. A at Bates 000028.) Individual 1 responds, "They go to Mexico brother" and "We'll some if anything we can make bill of sales so save the receipts". (Exh. A at Bates 000029.) The Defendant added, "Wow" and "I didn't save the last one but bet." (Exh. A at Bates 000029-30.) After discussing the receipts, Individual 1 and the Defendant then coordinate the meeting to buy guns that resulted in Count 2 of the Indictment. (Exh. A at Bates 000030-32, Doc. 1.)

The Defendant purchased 13 firearms as part of the straw purchasing scheme. (PSR ¶ 20.) Three of the 13 firearms were recovered in Arizona and California, including one

---

[1] "Tree" refers to marijuana.

[2] "Wym" is short for "what you mean".

[3] "Bet" means "okay".

[4] "Idc" is short for "I don't care".

of the firearms purchased on April 19, 2022, and charged in Count 2.  (PSR ¶ 12.)  Two of the firearms were recovered in connection with homicide investigations and one in the hands of a prohibited possessor.  *Id*.

The Defendant was charged on March 28, 2023.  (Doc. 1.)  He is released pending sentencing.  Sentencing is scheduled for April 1, 2024.

II.      PRESENT INVESTIGATION REPORT

Probation calculates the Defendant's base offense level at 12.[5]  (PSR ¶ 19.)  Pursuant to United States Sentencing Guidelines (USSG) §2K2.1(b)(1)(B), four levels were added because the offense involved 13 firearms.  (PSR ¶ 20.)  Pursuant to USSG §2K2.1(b)(5), four levels were added because the Defendant engaged in firearms trafficking.  (PSR ¶ 21.)  Pursuant to USSG §2K2.1(b)(6)(A), four more levels were added because the Defendant had reason to believe that the firearms would be exported out of the United States.  (PSR ¶ 22.)  After reductions for acceptance of responsibility, Probation calculates the Defendant's offense level at 21, criminal history category (CHC) I (37-46 months).  (PSR at 15.)  Probation recommends a sentence of 24 months to be followed by three years of supervised release.  *Id*.

III.      DEFENDANT'S OBJECTIONS TO THE PSR

The Defendant filed two objections to the PSR.  (Doc. 241.)  For the reasons explained below, the Defendant's objections should be overruled.

*Application of Firearms Trafficking Enhancement - USSG §2K2.1(b)(5)*

The Defendant first objects to the application of the firearms trafficking enhancement because there is no evidence that the firearms purchased on April 19, 2022, were recovered in Mexico despite the text message from Individual 1 to the Defendant saying that the guns were going to Mexico. (Doc. 31 at 1.)  Defendant's objection appears to miss the point.

---

[5] The 2021 United Sentencing Guidelines Manual was used to calculate the Defendant's sentencing guideline range.  (PSR ¶ 18.)

Probation properly applied the four-level firearms trafficking enhancement to the Defendant's base offense level. The United States Sentencing Guidelines §2K2.1, Commentary, Application Notes 13(A) explains that the firearms trafficking enhancement applies if the defendant:

(i)    transported, transferred, or otherwise disposed of two more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii)    knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual (I) whose possession or receipt of the firearm would be unlawful[6]; or (II) who intended to use or dispose of the firearm unlawfully.

Here, there is no dispute that the Defendant purchased 13 firearms as part of the straw purchasing scheme he was involved in; therefore, prong (i) is met.

Rather, the Defendant disputes that he meets the requirement for prong (ii). The United States disagrees because the Defendant had reason to believe that the straw purchasing scheme, he was involved with Individual 1 would result in the transport, transfer, or disposal of firearm to an individual who intended to use or dispose of the firearm unlawfully; thus, meeting prong (ii).

To determine if the firearms trafficking enhancement applies, the sentencing court may look to "the circumstances known to the defendant" instead of what happened to the firearms. *United States v. Ashante*, 782 F.3d 639, 644 (11th Cir. 2015). It is only necessary to prove that the defendant had "reason to believe" that his conduct would result in the unlawful use or disposal of the firearm. *See United States v. Prieto*, 85 F.4th 445, 449 (7th

---

[6] Application Notes 13(A) defines "individual whose possession or receipt of the firearm would be unlawful" as someone who "has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence" OR "at the time of the offense was on a criminal justice sentence".

Cir. 2023). "To satisfy the unlawful use or disposition prong, the government does not need to prove that the defendant knew 'of any specific felonious plans on the part' of the recipient of the firearms." *United States v. Ilarraza*, 963 F.3d 1, 12 (1st Cir. 2020) (citing *United States v. Marceau*, 554 F.3d 24, 32 (1st Cir. 2009)). The sentencing court may look at circumstantial evidence "and draw plausible inference therefrom" to determine whether a defendant had reason to believe that a firearm was going to be used or disposed of unlawfully. *Id*. The United States must prove by a preponderance that the enhancement applies. *Prieto*, 85 F.4th at 448; *United States v. Francis*, 891 F.3d 888, 896 (10th Cir. 2018); *Marceau*, 554 F.3d at 32.

Here, the Defendant was straw purchasing firearms for Individual 1 in exchange for payment, gas money, and marijuana. (Exh. A at Bates 000019-24.) As the Defendant admitted in the plea agreement and as part of the straw purchasing scheme, he was falsely reporting on ATF Form 4473 that he was purchasing the firearms for himself when in fact he was purchasing the firearms for Individual 1. (Doc. 26 at 6-7.) Straw purchasing is designed to hide the true purchaser of a firearm from law enforcement for a variety reasons, including nefarious reasons such as the planned use of the purchased firearm in future criminal activity or the unlawful exportation or transfer of the firearm. Although buying firearms while falsely claiming ownership is suspicious in of itself, the Defendant also tells Individual 1 on April 19, 2022, while negotiating his fees for a straw purchase, that he "idc," which is short for "I don't care" (Exh. A at Bates 000027) and "I'm in it for the money" (Exh. A at Bates 000028). The Defendant then adds, "just don't kill the president wit the mfs" (Exh. A at Bates 000028), to which Individual 1 responds "They go to Mexico brother" and "We'll some if anything we can make bill of sales so save the receipts" (Exh. A at Bates 000029). Creating fake bill of sales would further hide the transfer of the firearms from the Defendant and Individual 1 to others. In addition to discussing the use of fake bill of sales to hide the transfer of firearms, the Defendant asks Individual 1 what he could be charged with if he is asked, presumably by law enforcement, for the weapons

("So what happens if they ask for my weapons vault n ion got the weapons" and "What charge is that"). Individual 1 does not appear to understand the question.

It is clear from the above exchange, including the Defendant's own statements, and the nature of the straw purchasing scheme the Defendant was involved in with Individual 1, that the Defendant knew they needed to conceal the transfer and ownership of the firearms he purchased. He also knew he could be facing criminal liability for purchasing firearms for Individual 1. The Defendant also knew that Individual 1 was not keeping the firearms because Individual 1 told him so ("They go to Mexico brother"). It is irrelevant that firearms have not been recovered in Mexico. That Individual 1 was not keeping the firearms for himself and told the Defendant is more important. The Defendant went as far as cautioning Individual 1 to not commit a very serious crime with the firearms the Defendant purchased for him ("just don't kill the president wit the mfs"). Based on that statement, it can be inferred that the Defendant did not care if the firearms he purchased were used in other types of crimes so long as the firearms were not used in very serious crimes. Unfortunately for the Defendant, two of the firearms purchased were recovered in connection with homicides, which is a very serious crime. *See Asante*, 782 F.3d 639 at 647 (stating that the firearms trafficking enhancement punishes offenders for conduct that the offender knows or has reason to believe will result in the transfer of a firearm to someone whose possession or use is unlawful). As such, based on the above, the Defendant had reason to believe that the firearms he purchased as part of the straw purchasing scheme he was involved with Individual 1 would be used or disposed of unlawfully and he did not care if that happened. *See United States v. Whitaker*, 633 Fed.Appx. 104, 105 (4th Cir. 2015) (upholding the firearms trafficking enhancement in a case where the firearms transactions were conducted clandestinely, and one of the buyers planned to sell the firearms out-of-state and had no problems buying firearms from a felon).

*Application of Export Enhancement - USSG §2K2.1(b)(6)(A)*

The Defendant next objects to the application of the export enhancement pursuant to USSG §2K2.1(b)(6)(A) for the same reasons he objects to the application of the firearms

trafficking enhancement, namely, that the firearms purchased on April 19, 2022, were not recovered in Mexico. (Doc. 31 at 2.) Defendant's objection again appears to miss the point.

Probation properly applied the four-level export enhancement pursuant to USSG §2K2.1(b)(6)(A) to the Defendant's base offense level. The United States Sentencing Guidelines §2K2.1(b)(6)A) applies if the defendant:

> possessed any firearm or ammunition while leaving or attempting to leave
> the United States, or possessed or transferred any firearm or ammunition with
> knowledge, intent, or reason to believe that it would be transported out of the
> States.

Like the firearms trafficking enhancement, the United States needs to prove by a preponderance of the evidence that the four-level export enhancement applies. *Prieto*, 85 F.4th at 448; *United States v. Francis*, 891 F.3d 888, 896 (10th Cir. 2018); *Marceau*, 554 F.3d at 32. Like the firearms trafficking enhancement, it is only necessary to prove that the defendant had "reason to believe" that his conduct would result in the exportation of a firearm or ammunition out of the United States. *See Ilarraza*, 963 F.3d at 11. It is not necessary for the United States to prove that the trafficked firearms crossed an international border. *Id. See also United States v. Fields*, 608 Fed Appx. 806, 813 (11th Cir. 2015) (noting that firearms trafficking enhancement applies if a defendant transfers a firearm to an undercover officer who tells defendant that he/she is a convicted felon). It is also not necessary to show that a defendant played a direct role in the exportation. *Id*. Rather, the focus of the sentencing court's inquiry should be on the defendant's state-of-mind when determining whether a defendant knew, intended, or had reason to believe that a firearm or ammunition would be exported out of the United States. *Id*.

Here, Individual 1 told the Defendant that the firearms were going to Mexico ("They go to Mexico brother"). That the three recovered firearms were found in the United States does not preclude the possibility that the remaining 10 firearms may be in Mexico or that the firearms were intended to go to Mexico but were waylaid in the journey to Mexico after Individual 1 transferred the firearms to others. It is more important that Individual 1 told

the Defendant that the firearms were going to Mexico and the Defendant proceeded to buy more firearms for Individual 1 as part of the straw purchasing scheme on the very day that they had this conversation. As such, the four-level export enhancement applies because the Defendant had reason to believe that the firearms, he purchased for Individual 1 were going to be exported.

**IV.    Conclusion**

For the above reasons, the United States requests that the Defendant's objections be overruled.

Respectfully submitted this 20th day of March, 2024.

GARY RESTAINO
United States Attorney
District of Arizona

*s/Maria R. Gutierrez*
Maria R. Gutierrez
Benjamin Goldberg
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Michael J. Smith, Attorney for the Defendant.

*s/Maria R. Gutierrez*
U.S. Attorney's Office